Filed 04/22/25

VERMONT SUPERIOR COURT

Orange Unit
5 Court Street
Chelsea VT 05038
802-685-4610
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-SC-01948

> Rick's Mobile Home Transporting LLC v. Ryan Zarick

# DECISION ON THE MERITS

A hearing was held on April 10, 2025. Attorney Alexander Dean represented Plaintiff Rick's Mobile Home Transporting LLC, and Rick Wetherby and Dolly Wetherby provided testimony. Defendant Ryan Zarick was present and represented himself.

Plaintiff asserts a claim for balance due on an invoice for moving a mobile home. Defendant claims the work was not performed and he counterclaims for the deposit he paid.

Based on the evidence admitted, the court makes the following findings of fact and conclusions of law.

### Facts

In the fall of 2024, Defendant Ryan Zarick purchased a mobile home that was occupied and situated on a property in Brandon, Vermont. He planned to move it to a property in Bradford, Vermont. He contacted a mobile home mover who came to his Bradford property to observe the location where the mobile home would be placed and agreed to do the moving, but it rained on the planned day. Winter was coming so the season for moving mobile homes was coming to a close, and that contractor did not have any other available days to do the work.

Mr. Zarick contacted Rick's Mobile Home Transporting LLC, which is located in New Hampshire. Rick Wetherby has been in business for 38 years. Mr. Zarick had a telephone conversation with Dolly Wetherby, wife of Rick Wetherby. She has run the office for 15 years. She obtains information about proposed moves and prepares a quote for each job. She asks for photos of the mobile home site showing roads and any obstacles that might be involved in moving the mobile home.

On September 28, Mr. Zarick sent a photo of the mobile home, and on September 30, he sent a video of the driveway leading to the site to which it would be moved. A screen shot from the video is in evidence, although the full video is not in evidence. There was conversation between Dolly Wetherby and Mr. Zarick about the fact that there was a stump on the side of the road. The parties dispute whether there was an agreement that Mr. Zarick was to move the stump. Ms. Wetherby testified that she understood from Mr. Zarick that the stump would be removed. Mr. Zarick testified that although they discussed it he never stated that it would be removed. While in her redirect testimony Ms. Wetherby said that she made clear that the stump had to be removed, in both her direct testimony and on cross examination she said only that she understood that Mr. Zarick would be removing it. Based on her demeanor at these different points in the testimony, the court cannot find that she clearly told Mr. Zarick at the time of that phone conversation that it was a requirement that the stump be removed.

On October 1, Mr. Zarick texted the Plaintiff asking when they would be able to move the mobile home. Ms. Wetherby prepared a document entitled "Invoice" which gives a single total figure of $6,044.00. The document includes the size of the mobile home as well as "rental of axels, rental of tires, prep home for transport." It mentions Brandon VT and Bradford VT and has no other information. Ms. Wetherby emailed it to Mr. Zarick on October 2 with a request for a deposit of $1,500 to be paid prior to the move and requests for other specifications for the mobile home. There was no mention of removal of the stump as a prerequisite to the contract. On either the 1st or 2nd, Mr. Zarick asked when Plaintiff would be able to do the move, and was given the date of October 7, to which he agreed.

October 3: Mr. Zarick sent the following text message: "So the road is 21 feet my driveway is 38 feet at the entrance and 22ft at the narrow point in the beginning with the stunp. . .stump." He also sent four photos and 2 videos of the driveway. He asked for confirmation that Mr. Wetherby had received them, and received the message "Got them." He proposed moving the date to October 8 due to weather and said he was having two more loads of gravel coming. Plaintiff texted asking for the contract to be signed and the deposit paid. Mr. Zarick responded: "I can [sic] just waiting to have you guys confirm you can do that job. . .Make the angels    ??    Let me know and I'll send a deposit." In response, Plaintiff sent a text that only addressed the need for the deposit to be overnighted as a matter of timing "to get everything ready for the 8th." (Exhibit B.) Mr. Zarick responded with "So it's a yes that you can pull it off theb?, , ,Then?" Mr. Zarick paid the deposit and Ms. Wetherby ordered the permit necessary to do the move.

October 8: Mr. Wetherby went to the Brandon property with his moving truck, two laborers, and the required escort vehicle. The mobile home was not ready for transport as it was still occupied as a mobile home, and a deck was still attached to it. Mr. Zarick testified that he had told the occupants when it would be picked up then, but he apparently had not checked to make sure it was ready. There was a 3-hour delay while the occupants left and the deck was removed. Mr. Wetherby asked for more money due to the delay, which annoyed Mr. Zarick.

Mr. Wetherby then transported the mobile home to Bradford. When he arrived the two laborers walked up the driveway and said there was "no way" they could make it. Mr. Wetherby also walked up the driveway and saw that there was a bridge that prevented the mobile home from being transported to

the site. He later identified the bridge to both the police and to the court as a reason he could not complete the move.

Mr. Zarick widened the driveway "a little." Late in the day he texted Mr. Wetherby to ask if he knew where he could put the home. Mr. Wetherby responded that he had obtained permission from a neighboring landowner to leave it overnight but if he didn't have other direction from Mr. Zarick he would be "hauling it back to my shop to store it or sell it." Mr. Zarick responded by stating that it was Mr. Wetherby who was unable to fulfill the contract but he was willing to sign over the mobile home in exchange for return of the deposit.

Mr. Wetherby later told police that there was no way he could take the mobile home over the bridge. The evidence shows that the bridge was a significant obstacle. Mr. Zarick testified that the prior mover he engaged had physically inspected the site and planned to do the move, so he did not think the bridge was a problem. While Mr. Wetherby mentioned the stump during his court testimony, he initially spoke of the bridge as the problem. He also testified that the corner was a 90 degree corner, and the home was 70 feet long and needed a wide turn. There is no evidence that these characteristics of the property were not shown on the videos or photos that Mr. Zarick had provided. Mr. Wetherby had not gone himself or sent anyone to check on the feasibility of moving the 72' x 14' mobile home up the driveway to the site.

It turned out that there was another nearby windy road leading to the site for the mobile home, but it involved using the property of others and would mean that the mobile home would be on the site backwards. Mr. Wetherby asked Mr. Zarick to ask the neighbor for permission to turn around. The relationship between the two men became confrontational. Mr. Wetherby called the police, and two cruisers arrived with police who calmed things down.

It was necessary to figure out what to do with the mobile home. Mr. Wetherby had permission from a neighbor to park the mobile home overnight on the neighbor's property, which he did.

October 9 (Wednesday): The next morning, Mr. Wetherby returned to find that Mr. Zarick was showing the mobile home to someone to try to sell it. The police also returned. The neighbor gave permission for the mobile home to remain there until Friday at noon. Mr. Wetherby said that if Mr. Zarick had not removed it by Friday at noon he would take it to New Hampshire and put it in storage. Mr. Zarick again offered to transfer it to Mr. Wetherby and receive his deposit back, but Mr. Wetherby declined. Mr. Zarick texted "Im, definitely not paying to have it stored at your property that's for sure."

October 10 (Thursday):  The two men texted. Mr. Wetherby said he would be there the next day and Mr. Zarick should let him know where to take it so he could order permits.

October 11 (Friday): Mr. Zarick texted that Plaintiff had no permission to move the mobile home. He was concerned that Mr. Wetherby would put it in storage and then charge him storage fees. Mr. Wetherby texted that Mr. Zarick should have his attorney make contact so the two attorneys could "figure it out." Mr. Wetherby did move the mobile home, but not to storage. Rather, he parked it at a truck stop in Bradford. He claims he told Mr. Zarick where it was and was waiting for a contact from Mr. Zarick's lawyer to try to resolve the matter. Mr. Zarick claims that he was not told where the mobile home was, and that he did not know until a week later when a friend of his saw it at the truck

stop and told him. In any event, there was no communication between the parties during that interval. Mr. Zarick testified that he later gave the mobile home away.

Plaintiff seeks judgment for the balance on the invoice of $4,544.00. His out-of-pocket costs were $3,266.00, consisting of $704 for laborers' wages (each paid at $16 per hour), $418 for the escort ($19 per hour), $2,104 on fuel, and $40 for the permit. Defendant seeks return of his $1,500 deposit. He claims that if Plaintiff had accepted his offer to take the mobile home and return his deposit, Plaintiff would have made a profit as the mobile home was worth more than $6,000.00.

## Conclusions of Law

Plaintiff claims that it substantially performed the contract but was prevented from completing it due to impossibility of performance. Plaintiff blames the impossibility on Mr. Zarick's failure to remove the stump, but the evidence shows that the existence of the bridge, and also the 90 degree angle, were at least as important if not more so as a basis for the mobile home not being able to go up the driveway. Mr. Zarick had been requested to send photos of the driveway, which he did, prior to any agreement between the parties. He also sent measurement information. Plaintiff has not shown that the videos and photos and measurements sent by Mr. Zarick failed to accurately describe the circumstances of the driveway. Plaintiff has also not proved by a preponderance of the evidence that Mr. Zarick promised to remove the stump, or that the mobile home could have been installed if the stump had been removed given that the bridge, which Mr. Wetherby identified as critical, would still have been there.

On the contrary, Mr. Zarick's photos and videos, sent when he sought assurance that the job could be done before he sent the deposit, clearly showed the stump, indicating it had not been removed, and Mr. Zarick made no representation that it would be moved. The only reasonable interpretation of his communication was that he sought assurance that the job could be done under the circumstances shown in all his photos and texts, including the most recent one showing the stump and identifying the width of the road at the stump. There was no response from Plaintiff to the effect that the job could not be done unless the stump was removed, or that it could not be done for any other reason, such as the bridge or driveway angle. Mr. Zarick specifically wanted assurance that the job could be done given the angles. He received it, and sent the deposit.

The evidence supports the conclusion that the reason that the job could not be done was that Plaintiff failed to accurately determine the effect that the stump, the bridge, and or the angle of the corner would have on the ability to install the mobile home at the requested site. Mr. Zarick supplied all the information that Plaintiff sought. Plaintiff was the party with the expertise to know whether the move could be completed under those circumstances or not. The evidence is that it had all the information it requested and the information included red flags. It chose not to make an advance site visit but represented to Mr. Zarick that it could perform. Mr. Zarick reasonably relied on Plaintiff's expertise and representation that the job could be done when he sent the deposit signifying his agreement to the contract.

Impossibility of performance may excuse a party from performing a contract unless the promisor "is guilty of contributing fault." Restatement (First) of Contracts § 465 (1932). Under the Second Restatement of Contracts, ". . .a party may not avail himself of the doctrine of impossibility of

24-SC-01948 Rick's Mobile Home Transporting LLC v. Ryan Zarick

performance if he is guilty of contributory fault." Calamari & Perillo, Contracts (3rd ed.) § 13-2 See also Dobbs, Law of Remedies, pp 732-733. In this case Plaintiff caused the impossibility by failing to adequately determine, prior to the formation of the contract, when he had all the pertinent information and the expertise to make the determination, that the mobile home could not be moved up Mr. Zarick's driveway.

The court concludes that it was Plaintiff's representatives who made a material representation to Mr. Zarick—that Plaintiff could complete the move--that induced him to enter into the contract and send the deposit. It was a representation that Plaintiff could not fulfill due to its own failure to adequately investigate or analyze available information. The representation was key to the formation of the contract.

"If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." Restatement (Second) of Contracts § 164 (1981). Mr. Zarick relied on Plaintiff's material representation that the job could be done when he agreed to the contract and sent the deposit and is therefore justified in voiding the contract and declining to pay the contract price in full.

Nonetheless Mr. Zarick was responsible for some of the costs incurred by Plaintiff. He did not have the mobile home properly prepared when Plaintiff arrived in Brandon. This caused Plaintiff to incur unjustified out-of-pocket expenses for three hours of extra work on the part of the laborers and escort in addition to loss of the value of Mr. Wetherby's time. These expenses are clearly attributable to Mr. Zarick's failure to fulfill his obligation to have the mobile home ready to be transported. In addition, Plaintiff removed the mobile home from the Brandon site to Bradford, conferring a benefit to Mr. Zarick in that he would have had to move the mobile home from its original site in any event. Mr. Zarick would be unjustly enriched if he were to have his deposit returned after (a) causing Plaintiff to incur unexpected costs and (b) retaining the benefit of the transport of the mobile home off the Brandon property. He is therefore not entitled to the return of his deposit. Furthermore, Mr. Wetherby had no obligation to agree to Mr. Zarick's offer to sign over the mobile home in exchange for the return of the deposit. The fact that the offer was declined does not result in Mr. Zarick having an entitlement to the return of the deposit.

For the foregoing reasons, Plaintiff's claim is denied and Defendant's counterclaim is denied. Each party is responsible for its own costs and attorney fees.

Electronically signed April 18, 2025 pursuant to V.R.E.F. 9 (d).

_Mary Miles Teachout_

Mary Miles Teachout
Superior Judge (Ret.), Specially Assigned